Merrick, J.
This is an action in tort to recover for the negligence of the defendant, Bradlees, Incorporated (“Bradlees”), in permitting a ladder in its retail store to be placed in such a manner that it fell on the plaintiff, striking her head and *10 causing personal injuries.[2]
Judgment was entered for the plaintiff. The defendant now claims to be aggrieved by the trial court’s disposition of certain motions and requests for rulings of law which present the following issues for appellate review: (1) whether there was “good cause” for the failure of the plaintiff to make service within 90 days as mandated by Dist./Mun. Cts. R. Civ. R, Rule 4(j); and (2) whether there was sufficient evidence to warrant findings of a duty owed by Bradlees to the plaintiff and a breach of that duty.
1. Following the plaintiffs accident, her prior counsel sent a claim letter to “Bradlees” at the Meadow Glen Mall in Medford, Massachusetts where the accident occurred. Counsel received a letter in response from a Scott Wetzel Services, Inc. which stated that “we at Scott Wetzel provide the claim handling and risk management services for the Stop & Shop, Companies, Inc., a self-insured corporation and as such are presently in receipt of your letter...” Accordingly, plaintiffs prior counsel commenced this action on January 26, 1990 in Middlesex Superior Court against “Stop & Shop Companies, Inc., d/b/a Bradlees,” and served the complaint and summons on February 23, 1990 at the Bradlees store in Medford. The summons was addressed by inserting the typed entry “Bradlees” after the printed language ‘To the above named defendant” on the summons form. Stop & Shop’s answer included a denial that it operated Bradlees. The parties thereafter engaged in extensive discovery.
In May, 1991, plaintiff’s prior counsel learned that Bradlees was operated by a separate corporation, Bradlees, Incorporated, rather than by Stop & Shop. On June 12, 1991, the Superior Court allowed plaintiff’s motion to amend her complaint by substituting “Bradlees, Incorporated” for “Stop & Shop Companies, Inc. d/b/a Bradlees” in the caption and in the text of the complaint. Thereafter, Stop & Shop was no longer a defendant in the case. The only defendant was Bradlees, Incorporated.
On January 22, 1992, while the plaintiff and Bradlees were the only parties in the case, an assented to motion to continue a trial date was filed.[3] On July 28, 1993, the defendant filed a G.L.c. 102C motion to “remand,” which was allowed on September 7, 1993. From the original answer to date, Stop & Shop and the successor defendant have been represented by the same attorney. On December 8, 1993, Bradlees’ counsel advised the plaintiff’s attorney that he took the position that proper service had not been made upon Bradlees. On December 15, 1993, a summons, complaint and the plaintiff’s motion to amend the complaint were served on Bradlees at the Bradlees store in the Meadow Glen Mall. A joint pre-trial memorandum was filed on December 29, 1993.
On January 4, 1994, Bradlees filed a motion to dismiss pursuant to Dist./Mun. Cts. R. Civ. R, Rule 4© for plaintiff’s failure to serve Bradlees within 90 days of the amendment of the complaint. That motion was allowed, before plaintiff’s counsel received notice of it, on January 12, 1994. The plaintiff moved to vacate the dismissal on January 19, 1994. The plaintiff’s motion was allowed on January 26, 1994 upon a specific finding by the court that “good cause” had been shown based upon the above recited history of the case.
1. Rule 4® of the Dist./Mun. Cts. R. Civ. P. provides:
Summons; Time Limit for Service. If a service of the summons and *11 complaint is not made upon a defendant within 90 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within such period, the action shall be dismissed as to that defendant without prejudice upon the court’s own initiative or upon motion.
The burden is upon the plaintiff, who seeks to avoid a Rule 4© dismissal or to obtain an extension of time, to show “good cause” why service was not timely made. Shuman v. The Stanley Works, 30 Mass. App. Ct. 951, 953 (1991), aff’ing 1990 Mass. App. Div. 6. A determination of “good cause” rests within the trial judge’s discretion. Id. “Good cause” is not established by lack of diligence or inadvertence of counsel, Id. at 953-954, or by the absence of prejudice to the defendant. Hull v. Attleboro Savings Bank, 33 Mass. App. Ct. 18 (1992). To the extent Massachusetts courts have not settled upon a precise definition of “good cause” under Rule 4(j) applicable in all contexts, we are guided by judicial interpretations of the cognate Federal Rule. Id. at 25. See also Shuman v. The Stanley Works, supra at 952-953.
While not defined in Rule 4®, “good cause” has been held to require at least as much as would be necessary to show excusable neglect as opposed to ordinary mistake, neglect or inadvertence. Braxton v. United States of America, 817 F.2d 238, 241 (3rd Cir. 1987). In the context of Rule 4(j), excusable neglect “seems to require a demonstration of good faith on the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rule.” C.A. WRIGHT & A.R. MILLER, 4A FEDERAL PRACTICE & PROCEDURE, §1165 (1987).
The specific question presented here is whether “good cause” may be found in a plaintiff’s good faith belief that a defendant, substituted for a related former defendant and represented by the same counsel, who continues to participate actively in the case after the substitution, will stand upon its right to formal service or raise a defense under Rule 4®.
“Good cause” may arise from the defendant’s conduct. Indeed, the only specific example of good cause which appears in the legislative history of Rule 4(j) is evasion of service by the defendant. Shuman v. The Stanley Works, supra at 953. “Good cause” has been found where a defendant, although not properly served, participated in the case and waited until after the expiration of the statute of limitations to file a motion to dismiss under Rule 4(j). Federal Deposit Ins. Corp. v. Denson, 139 F.R.D. 346 (S.D. Miss. 1990). The court therein reasoned that, by delaying his motion, the defendant may have misled the plaintiff into thinking the he would not pursue a defense under Rule 4(j). Id. at 350.
In the instant case, we cannot say that the judge abused his discretion by finding “good cause” for the delay in service in light of Bradlees’ arrangement of its business affairs, including its response to claims made, and its active participation in this case despite the absence of effective service.
2. Bradlees also charges error in the court’s action on its motion for involuntary dismissal and requests for rulings of law which tested the sufficiency of the evidence that it owed a duty to the plaintiff as the party in control of the Bradlees store where the accident occurred.
In Nugent v. Popular Markets, Inc., 353 Mass. 45 (1967), the court held that “very slight evidence in addition to identity of name or names might be enough to prove identity of person.” Id. at 47. The plaintiff in Nugent claimed injury from food purchased at the “Popular Market” in Springfield where he usually shopped. The original of a written notice of breach of warranty directed to the defendant “Popular Markets, Inc.” at another location in Springfield was produced by the defendant at trial. The notice included a statement that the offending item was purchased at “your store.” That fact was held sufficient to constitute “the very slight evidence” beyond similarity of names necessary to prove the defendant’s identity. Noting a *12 predecessor statute to G.L.c. 156B, §11 (a) which prohibited a corporation from assuming the trade name of another or using a name so similar as to be likely to be mistaken for it, the Court reasoned that “it is unlikely that there were two separate businesses in Springfield both having ‘Popular Market’ or ‘Popular Markets’ as part of their name.” Id. at 47.
In addition to identity of name, the reported evidence in the instant case included testimony that the plaintiff went to Bradlees in Medford to buy two large Rubbermaid trash barrels which she had been made aware were the subject of a sale at Bradlees. Those Rubbermaid barrels were in fact on sale at the Medford store. After the accident, the plaintiff was referred by a Bradlees employee to the manager. She identified the employee as such by his name tag which said “Brad-lees.” The claim letter and summonses which were addressed by the plaintiff to Bradlees at the Medford store address produced, successively, responses from Stop & Shop and then both a motion to dismiss and finally an answer by Bradlees, Incorporated.
These facts were sufficient to constitute the “very slight evidence” necessary to establish identity of person between the “Bradlees” store where the plaintiff was injured and the defendant “Bradlees, Incorporated.” The defendant would have been free, of course, to introduce evidence that it was not the operator of the Bradlees in Medford. It did not do so. Smith v. Ariens Co., 375 Mass. 620, 623 (1978) (Brand name decal sufficient to establish identity of product manufacturer). See also Peitroforte v. Yellow Cab of Somerville, Inc., 19 Mass. App. Ct. 961 (1985) (Name on side of cab and telephone number called held sufficient to identify cab as defendant’s).
3. Finally, Bradlees argues that the evidence was insufficient to permit a finding of its breach of any duty owed to the plaintiff. The reported evidence indicates that the plaintiff went to Bradlees to purchase two large Rubbermaid trash barrels which were on sale. Barrels for sale were located in a separate, short aisle consisting of stacks of barrels, each five or six feet high on a two or three inch shelf. The plaintiff is 5 ft., 3 in. tall and had to reach up at a stack of Rubbermaids to claim two of the sale item barrels. As she did so, a closed stepladder more than five feet tall, which had previously not been visible to the plaintiff, fell down and struck her on the forehead.
The trial judge could properly have evaluated the plaintiff’s alertness and powers of observation and, given the fact that the ladder struck the plaintiff on the forehead, reasonably inferred that the ladder had been placed on or against a stack of barrels in such a way as to malee it not visible to a customer approaching from the same direction as the plaintiff. From the circumstances of the accident, the judge could have further inferred that the ladder had been placed in such a way as to cause it to fall when a customer removed a barrel or barrels from the stack as the defendant intended her to do. From the additional facts that the ceiling tiles directly above were water stained and broken and that the other items for sale in the aisle were all barrels, the judge could have and did infer that the ladder belonged to Bradlees and was not for sale.
The evidence so viewed would have permitted, although not required, a finding for the plaintiff. Raviv v. K-Mart Corp., 1993 Mass. App.. Div. 225. Where evidence, however marginally sufficient, has been presented, a determination of those inferences which may reasonably be drawn is for the trial judge. Id. at 226.
There being no error, the report is dismissed.
So ordered.

A claim by the plaintiff’s husband, Robert C. Stevens, for loss of consortium was not pursued at trial.

By order of the trial judge, Bradlees included in the report a complete listing of all items filed in the case and the party filing each. This item alone is silent as to which party filed the motion. As it was assented to, both parties clearly participated.