Elizabeth M. BROWN, Plaintiff,

v.

**FLORIDA KEYS AQUEDUCT AUTHORITY, Defendant.**

No. C–3–83–429.

United States District Court,
S.D. Ohio, W.D.

March 28, 1985.

Roger J. Makley, John G. Witherspoon, Jr., Dayton, Ohio, for plaintiff.

Charles J. Faruki, D. Jeffrey Ireland, Dayton, Ohio, James T. Schoenbrod, Key West, Fla., for defendant.

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION TO DISMISS FOR REASON OF LACK OF THIS COURT'S *IN PERSONAM* JURISDICTION; ALTERNATIVE MOTION TO TRANSFER DEEMED MOOT; CASE DISMISSED; TERMINATION ENTRY

RICE, District Judge.

The Defendant, Florida Keys Aqueduct Authority, is a political subdivision of the state of Florida, created by the state legislature for the purpose of operating a pipeline system for the distribution of potable water to the Florida Keys and distributing that water to its residential and commercial customers. On July 11, 1980, the Defendant offered for sale more than $62 million worth of 9¼ percent Water Revenue and Refunding Bond Anticipation Notes ("Notes"). The entire issue was purchased from the Defendant by an underwriting syndicate headed by Bache Halsey Stewart Shields, Inc. ("Bache") in New York and Southeastern Municipal Bonds, Inc. ("Southeastern") in Orlando, Florida. This Purchase Agreement was not executed in the state of Ohio. The Purchase Agreement provided that the Notes themselves were to be delivered to the purchaser group on a specified date in a location within the city of New York, New York. The Agreement specifically provided that it "shall be construed under the laws of the State of New York." Prior to the sale of the Notes to the Bache group, a "Blue Sky" memorandum was prepared by legal counsel for the Defendant, as the issuer, which provided in pertinent part as follows:

> This will advise you that *no action is being taken to qualify* the proposed offering of the captioned *Notes* (the 'Notes') *for sale* to the public *in* the State of Mississippi, New Hampshire and

*Ohio.* Accordingly, the Notes *may not* be offered or sold in any amount to the public in such jurisdictions." (Emphasis added)

By some unknown route and for some unknown reason, a portion of these Notes, issued by the Defendant, was sold by the Dayton, Ohio, office of Merrill Lynch, Pierce, Fenner and Smith, Inc., to the Plaintiff on October 22, 1980. The gist of the Plaintiff's lawsuit stems from the fact that after she had received several interest payments, pursuant to the terms of the Notes in question, the Defendant redeemed all of these Notes, without knowledge to the Plaintiff, by causing to be published a notice of redemption in a publication of less than general circulation. The Plaintiff contends that the notice was ineffective and improper under the terms of the Agreement set forth in the Notes and that, even if proper, same was inadequate to give her the notice required under the law. The Plaintiff did not receive notice from the Defendant of the redemption until nine months following the date of same (one interest payment had been sent to her in error, following the date of redemption). Accordingly, she claims, *inter alia,* a loss of interest payments to which she deems herself entitled and also the loss of the use of her principal sum for investment purposes. In her Complaint, filed May 11, 1983, the Plaintiff sets forth two claims for relief, to wit: a breach of the Agreement set forth in the Note, itself, by virtue of the Defendant's intentionally, willfully and maliciously affecting an unreasonable notice of the purported redemption, thus depriving her of her entitlement to certain interest payments and the use of her principal amount for investment opportunities, and a second cause of action setting forth a violation of 42 U.S.C. Section 1983, claiming that the Defendant's failure to pay Plaintiff the full amount of the interest owed deprived her of her property right secured under the fourth amendment to the United States Constitution, without the compliance either with the redemption provisions of the Agreement or without notice reasonably calculated to apprise her of the purported redemption.

The Defendant has never conducted business in the state of Ohio, owns no property in the state of Ohio, maintains no office there and has no employee or agent in that state. Additionally, it maintains no bank account and owns no property of any description within the state of Ohio. It has made no purchase in the state of Ohio from an Ohio vendor. In short, the Defendant has had no contact in or with the state of Ohio. Affidavit of Bernard L. Schattner, appended to Defendant's Motion to Dismiss, Doc. # 7.

The Defendant has filed a three-branched Motion to Dismiss, upon the following grounds:

1. lack of *in personam* jurisdiction, Fed.R.Civ.P. 12(b)(2), over the person of the Defendant;

2. insufficiency of process and insufficiency of service of process, Fed.R. Civ.P. 12(b)(4), (5), over the Defendant; and

3. improper venue over this action, Fed. R.Civ.P. 12(b)(3).

As an alternative, the Plaintiff has requested that, in the *unlikely event* that this Court finds that it has *in personam* jurisdiction over the Defendant and that service and venue are proper, the captioned cause be transferred to the United States District Court for the Southern District of Florida, pursuant to the provisions of 28 U.S.C. Section 1404(a).

1. The captioned cause must be dismissed for the reason that this Court lacks *in personam* jurisdiction over the Defendant. Fed.R.Civ.P. 12(b)(2).

A motion calling into question this Court's lack of *in personam* jurisdiction over a defendant requires the Court to examine, as the law of the forum, Ohio's long-arm statute, Ohio Revised Code Section 2307.382, and its counterpart found in the Ohio Rules of Civil Procedure, Rule 4.3(A). The Supreme Court of the United States requires minimum contacts between the forum state and the defendant. *Han-*

*son v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The Ohio long-arm statute is co-extensive with the constitutional limits of personal jurisdiction stated by the Supreme Court in *Hanson v. Denckla, supra,* and *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The constitutional limit on personal jurisdiction is that the defendant must have "minimum contacts" with the forum state. *International Shoe Co., supra,* at 316, 66 S.Ct. at 158. In Ohio, a non-resident transacting business in this state may be subject to an Ohio court's jurisdiction or the jurisdiction of a federal court sitting in Ohio, under the facts set forth above, only if the cause of action arises from that business transaction. As stated in Ohio Revised Code Section 2307.-382:

> [A] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> 1. transacting any business in this state.

None of the other seven scenarios set forth in Ohio Revised Code Section 2307.382 and Ohio R.Civ.P. 4.3(A) are applicable herein.

■ When the court's *in personam* jurisdiction over a defendant is called into question by a motion to dismiss, the plaintiff has the burden of proving specific facts that show that the court has personal jurisdiction over the defendant. *Chattanooga Corp. v. Klinger,* 704 F.2d 903, 906 (6th Cir.1983). As this Court has held in *Stewart Coach Industries, Inc. v. Moore,* 512 F.Supp. 879, 883 (S.D.Ohio 1981):

> However, where a motion to dismiss for improper service and lack of personal jurisdiction is filed, pursuant to Fed.R. Civ.P. 12(b)(2), ..., and said motion is supported by affidavit, it is well settled that 'the non-moving party [herein, Plaintiff] may not rest upon allegations or denials in his pleading but his response by affidavit or otherwise must set forth specific facts showing that the Court has jurisdiction.'

Citations omitted. In this case, the Plaintiff has failed to allege and to show (by affidavit or otherwise) specific facts which link the Defendant with the state of Ohio. Plaintiff alleges only that she is a resident of Ohio, that she paid for the Notes in Ohio, that she sent her interest coupons from Ohio and received payment from the Defendant's Trustee in the state of Ohio.

■ The Sixth Circuit has set forth a three-part test for determining whether personal jurisdiction exists over an out of state defendant. *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir.1968):

> First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Accord: In-flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 226 (6th Cir.1972).

■ This Court has determined that Plaintiff's Complaint must be dismissed as to the Defendant herein, because the Plaintiff has failed to show that the Defendant purposefully availed itself of the privilege of acting in the state of Ohio or of causing a consequence in this state. The Defendant did not act freely or intentionally in Ohio. As stated in *In-flight Devices v. Van Dusen, supra,* 466 F.2d at 228:

> ... [T]he purposeful action test is merely base line requirement, designed to insure that the defendant has become involved with the forum state through actions freely and intentionally done. It seeks to avoid the assertion of jurisdiction in a situation where all contacts result from a decision made by plaintiff [as herein, where Plaintiff has made the decision to purchase the Notes from a wholesale distributor of same to whom said Notes were distributed by the Defendant's un-

derwriter] as was the case in *Hanson v. Denckla.*

In *World-wide Volkswagen Corp v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), plaintiff's brought a products liability action in an Oklahoma State Court to recover for personal injuries sustained in Oklahoma in an accident involving an automobile that had been purchased by them in New York, while they were New York residents. The defendants included the automobile retailer and its wholesaler, New York corporations that did no business in Oklahoma. The Supreme Court concluded that there was a total absence in the record of the affiliating circumstances set forth in *International Shoe Co. v. Washington, supra,* that are a necessary predicate to any exercise of state court jurisdiction, to wit: the existence of minimum contacts, such that maintenance of the suit in the forum does not offend traditional notions of fair play and substantial justice, where the relationship between the defendant and the forum state is such that it is reasonable to require the corporation to defend the particular suit which is brought there. The Court noted that the defendants carried on no activity whatsoever in Oklahoma; they closed no sales and performed no services there, availed themselves of none of the benefits of Oklahoma law, and solicited no business there either through sales persons or through advertising reasonably calculated to reach that state; nor did the record show that they regularly sold cars to Oklahoma residents or that they indirectly, through others, served or sought to serve the Oklahoma market. Although it is foreseeable that automobiles sold by the defendants would travel to Oklahoma, and that the automobile might cause injury in Oklahoma, "foreseeability" alone is not a sufficient benchmark for personal jurisdiction under the Due Process Clause. The foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state; rather, it is that the defendant's conduct in connection with the forum is such that he should reasonably anticipate being haled into court there. The Court concluded that jurisdiction cannot be supported on the theory that the defendants earned substantial revenue from goods sold in Oklahoma.

Applying *World-wide Volkswagen* to the facts of the instant action, and construing these facts most strongly in favor of the non-moving party herein (the Plaintiff), the most that can be argued is that when the Defendant sold Notes in question to an underwriter, with nationwide sales outlets and contacts, it was not only foreseeable that a Note could have been sold in Ohio, but also that the Defendant's action in setting the Notes in question into the stream of commerce was such that it should have reasonably anticipated being brought into court in any state (such as Ohio) in which its Notes were sold. However, such an argument would run afoul of the Supreme Court's decision in *World-wide Volkswagen Corp. v. Woodson, supra.* In addition, such an argument, weak to begin with, would be destroyed by the fact that the Defendant's legal counsel, prior to the sale of the Notes to the underwriter, specifically stated that "the Notes may not be offered or sold in any amount to the public in such jurisdictions [such as Ohio, wherein the Defendant had taken no action to qualify the proposed offering of the Notes for sale in such states]." Such a caveat, disclaimer or notification clearly shows that the Defendant had no reasonable anticipation, based upon its non-dealings with the state of Ohio, of being brought into court in this state. In addition, and most importantly, the caveat, disclaimer or notification clearly shows that the Defendant took no purposeful actions to avail itself of the privilege of acting in Ohio, to freely and willingly act within the state of Ohio, as is required by the first prong of the three-part test in *Mohasco, supra.* In the captioned cause, the Plaintiff has not acted within the forum state. Plaintiff, by purchasing the bond from a retail customer of the underwriter to whom Defendant sold the Notes, has acted unilaterally. The Defendant has had no contacts with the forum state and, accordingly, should not reason-

ably anticipate being brought into court in said state. The Defendant has not become involved with the state of Ohio through actions taken purposefully, freely and intentionally. In fact, Defendant took what actions it could to guard against the possibility that its Notes would be sold within the state of Ohio.

Since the Court has concluded that the Plaintiff has failed to satisfy the first prong of the three-part test set forth in *Southern Machine Co. v. Mohasco*, the Court need not dwell upon the second and third prong, save and excepting to say that even if it could be argued that the cause of action arose from the Defendant's activities in setting certain Notes into the stream of commerce, which were eventually sold to an Ohio Plaintiff, by no stretch of the imagination could it be argued that the Defendant had a substantial enough connection with the state of Ohio to make the exercise of jurisdiction over the Defendant therein reasonable. Such an exercise of jurisdiction would offend traditional notions of fair play and substantial justice.

Although the first prong of the Defendant's Motion to Dismiss (coupled with an alternative motion to transfer, should the Motion to Dismiss be granted) has been sustained, this Court will address the other prongs of the Defendant's Motion to Dismiss.

2. The Defendant's Motion to Dismiss the Plaintiff's Complaint, pursuant to Fed.R. Civ.P. 12(b)(4) and (5), due to insufficiency of process and insufficiency of service of process, would have been deemed by this Court to be not well taken and same would, therefore, be overruled in its entirety.

 It is clear (and the Plaintiff does not contend otherwise) that process in this case was improper, having been effected pursuant to Fed.R.Civ.P. 4(c)(2)(C)(ii), rather than pursuant to Fed.R.Civ.P. 4(d)(6), in view of the fact that the Defendant is a governmental body established by the state of Florida. Neither is it contested that the period of 120 days following the date of the filing of the Complaint, within which a plaintiff has to make proper service, Fed.R.

Civ.P. 4(j), has elapsed without such proper service having been made. However, this Court interprets Fed.R.Civ.P. 4(j) in such a way to allow a tolling of the running of the 120 days, upon the filing of either a motion to quash service or the filing of a motion to dismiss for insufficiency of process or insufficiency of service of process; said 120-day period not to continue to run until such time as the Court has taken action on the motion. Should the captioned cause have survived the Motion to Dismiss for lack of *in personam* jurisdiction and the Motion to Dismiss for improper venue, this Court would have allowed the Plaintiff that number of days (of the 120) that had not elapsed, prior to the filing of the Motion to Dismiss for insufficiency of process or insufficiency of service of process, to make proper service pursuant to Fed.R.Civ.P. 4(d)(6). Such a ruling would have caused no prejudice to a defendant which, after all, was well aware of the pendency of the lawsuit and the allegations therein; sufficiently aware that it could file and argue a very sophisticated motion to dismiss.

3. The Defendant's Motion, seeking an Order of the Court dismissing the captioned cause for improper venue, pursuant to Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. Section 1406(a), would have been deemed to be well taken. The Court would have, accordingly, adopted Plaintiff's suggestion and dismissed Count II of the Complaint, an action which would have made venue in this district proper in view of the fact that the Plaintiff's Complaint would have been based on diversity jurisdiction alone.

Not much is to be said for the Plaintiff's argument to the effect that the captioned cause, as presently pleaded, is really a diversity action, with this Court taking jurisdiction over the 42 U.S.C. Section 1983 action set forth in the second cause of action by means of pendent jurisdiction, except to say that such a theory is both novel and not well taken.

4. The Defendant's alternative motion, seeking an Order of the Court transferring the captioned cause to the United States District Court for Southern District of Flor-

ida, pursuant to 28 U.S.C. Section 1404(a), is deemed by this Court to be moot and same will, therefore, not be ruled upon. In ruling as aforesaid, this Court concludes that a case can be transferred pursuant to Section 1404(a) only if the Court finds that it had jurisdiction over the person of the Defendant and that venue was proper within the district. Within the Sixth Circuit, the transferor court must have both personal jurisdiction and venue in order to transfer an action under Section 1404(a). *Martin v. Stokes*, 623 F.2d 469 (6th Cir. 1980). In the absence of either or both, the district court can transfer an action *only* under Section 1406(a). *Id.*

Had the aforementioned motion not been rendered moot, this Court would have required the Plaintiff to set forth specific facts, by affidavit, demonstrating that the United States District Court for the Southern District of Ohio was the more convenient forum. As the pleadings now stand, the only such "specific facts" are those facts contained in the memorandum of the Plaintiff's attorney opposing the Defendant's Motion to Transfer.

WHEREFORE, based upon the aforesaid, this Court concludes that the captioned cause must, upon Defendant's motion, be dismissed for this Court's lack of *in personam* jurisdiction over the person of the Defendant. Fed.R.Civ.P. 12(b)(2).

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.